UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Criminal No. 1:18-cr-10086-IT |
| | * | |
| MANUEL ALEJANDRO GUZMAN SOTO, | * | |
| | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM & ORDER

April 17, 2020

TALWANI, D.J.

Defendant Manuel Alejandro Guzman Soto has filed an Expedited Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) [#41] in light of the COVID-19 pandemic. The government opposes his motion. The court finds that it has subject matter jurisdiction under 18 U.S.C. § 3582(c)(1)(A) to consider Defendant's motion, that Defendant need not fully exhaust all administrative rights to appeal a failure of the Bureau of Prisons ("BOP") to bring a motion for compassionate release, and that where Defendant has made a request to the warden of his facility to bring a motion, a court need not wait thirty days after such request before acting on the defendant's motion. The clerk shall set the matter for expedited telephonic hearing to address whether extraordinary and compelling reasons justify a sentence reduction consistent with applicable policy statements issued by the Sentencing Commission, whether home confinement as determined by the BOP is an available alternative for a defendant facing removal, and whether the government's two-week quarantine request is reasonable.

I.   Background

On July 17, 2018, Defendant pled guilty to one count of making false statements on an

application for a United States passport in violation of 18 U.S.C. § 1542. The court sentenced Mr. Guzman Soto to two months imprisonment followed by two years of supervised release, with special conditions of supervision mandating that, if subject to a final order of deportation, he must not return without prior permission of the Secretary of the Department of Homeland Security and that he must use his true name and was prohibited from using false identifying information. Judgment [#24]. Following his term of imprisonment, Mr. Guzman Soto was deported to the Dominican Republic, but returned to the United States during the supervised release period. He was arrested on December 20, 2019, and charged with violation of the special conditions. Petition [#28]. On February 13, 2020, Defendant admitted to violating the terms of his supervised release by returning to the United States after being deported and by providing a false name and birthdate to Border Patrol agents. Judgment [#40]. The court revoked Defendant's supervised release and sentenced Defendant to six months incarceration followed by one year of supervised release. Judgment [#40].

Defendant is currently incarcerated at MDC Brooklyn in New York City. According to the BOP website, MDC Brooklyn has reported that 4 inmates and 17 staff members have tested positive for COVID-19. See Federal Bureau of Prisons – COVID-19 Cases, https://www.bop.gov/coronavirus, (last accessed Apr. 17, 2020); see also Def's Ex. 1 – Letter from Warden Edge [#46-1] (stating that, as of April 9, 2020, only eleven inmates had been tested, and of these, three were diagnosed with coronavirus, and that as of that date, nine staff members had tested positive). New York has the most COVID-19 cases in the country and New York City has confirmed over 123,000 people infected by COVID-19, with over 11,000 fatalities in the city. See COVID-19 Tracker, available at https://www.bing.com/covid/ local/new york_unitedstates (last accessed Apr. 17, 2020); COVID-19 Tracker - New York State,

Department of Public Health, https://covid19tracker.health.ny.gov (last accessed Apr. 17, 2020).

Defendant's scheduled release date is June 8, 2020. Def's Mot. for Compassionate Release 2 [#41]; Ex. 1 to Opp'n – Inmate Locator [#42-1]. On April 1, 2020, Defendant's counsel submitted a request to the warden of MDC Brooklyn for reduction in sentence pursuant to 18 U.S.C. § 3582 in light of the COVID-19 pandemic, seeking to reduce his sentence by two months.

The parties agree that once Mr. Guzman Soto's sentence is served, he will likely be transferred to the custody of Immigration and Customs Enforcement for removal. Def's Mot. for Compassionate Release 1-2 [#41] (referencing immigration detainer); United States' Opp'n to Def's Mot. 9 [#42] (expecting that Defendant will be released to immigration officials).

II.    Discussion

Under 18 U.S.C. § 3582(c)(1)(A), a court may reduce a term of imprisonment after considering the factors set forth in section 18 U.S.C. § 3553(a) to the extent that they are applicable, if it finds "extraordinary and compelling reasons warrant such reduction" and that the reduction is consistent with applicable policy statements issued by the Sentencing Commission. Although this subsection originally required a motion of the Director of the Bureau of Prisons for a modification of a sentence, the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat 5194, amended § 3582(c)(1)(A) to allow such modification "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

The government contends that the motion is not properly before the court because

Defendant has not fully exhausted his administrative remedies.[1] Defendant does not dispute that he has not fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on his behalf, and that thirty days have not elapsed since Defendant made his request to the warden. The court considers 1) whether the court has subject matter jurisdiction to hear the motion, 2) whether Defendant is required to fully exhaust all administrative rights to appeal a failure of the Bureau of Prisons before seeking relief here, and 3) if Defendant has made a request to the warden, whether the court may act without waiting 30 days.

    A.   Subject Matter Jurisdiction

Since federal courts are courts of limited jurisdiction, a court must appraise its subject matter jurisdiction to hear and decide a case. Cusumano v. Microsoft Corp., 162 F.3d 708, 712 (1st Cir. 1998). Here, the government contends that the court lacks jurisdiction because defendant has not complied with his administrative exhaustion requirements.

A rule qualifies as jurisdictional only if "Congress has clearly stated the rule is jurisdictional" and, without such a statement, "courts should treat the restriction as nonjurisdictional in nature." Sebelius v. Auburn Reg'l Med. Ctr., 568 U.S. 145, 153 (2013) (quoting in part Arbaugh v. Y&H Corp., 546 U.S. 500, 515-16 (2006)). The Court distinguishes between jurisdictional rules and "claim-processing rules," which "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 435 (2011).

In Casanova v. Dubois, the First Circuit held that the absence of "sweeping and direct

---

[1] The government argues further that the factual record as to Defendant's health is not sufficiently developed, and that he makes no showing that he is more vulnerable than other inmates. The government requests finally that, if release is ordered, Defendant be required to quarantine for fourteen days first. These arguments will be addressed following an expedited hearing.

language that would indicate a jurisdictional bar rather than a mere codification of administrative exhaustion requirements" established that the administrative exhaustion requirements in the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(e), were nonjurisdictional. 289 F.3d 142, 146 (1st Cir. 2002); see also Richardson v. Goord, 347 F.3d 431, 434 (2d Cir. 2003); Ali v. District of Columbia, 278 F.3d 1, 5-6 (D.C. Cir. 2002).

In keeping with the First Circuit's decision in Casanova and the Supreme Court's caution that courts must look for clear Congressional intent, the lack of jurisdictional language in § 3582(c)(1)(A) answers the jurisdictional question. See Nkihtaqmikon v. Impson, 503 F.3d 18, 33 (1st Cir. 2007) ("[e]xhaustion of administrative remedies is a jurisdictional requirement only when Congress clearly ranks it as such.").[2] Section 3582(c)(1)(A) sets forth claims processing rules but does not contain language that could be constituted as a jurisdictional bar.

In United States v. Lugo, 2020 WL 1821010 (D. Me. Apr. 10, 2020), the court identified a circuit split as to whether the limitations of § 3582(c) are jurisdictional. Id. at *3 (declining to reach the issue, but identifying the Fifth, Ninth, and Tenth Circuits as having found the limitations of § 3582(c) to be jurisdictional, and the Seventh Circuit as having found the limitations of § 3582(c) not to be jurisdictional). However, none of these decisions dealt specifically with § 3582(c)(1)(A)'s exhaustion requirements. See United States v. Spears, 824 F.3d 908, 912-16 (9th Cir. 2016) (finding district court did not have jurisdiction to modify sentence under § 3582(c)(2) where the guideline amendment did not lower the defendant's guideline range); United States v. Spaulding, 802 F.3d 1110, 1124 (10th Cir. 2015) (district court

---

[2] This court's statement in United States v. Sloane, 19-cr-10117-IT (Dckt. No. 647) (D. Mass. Mar. 19, 2020) that "the court's jurisdiction to modify Defendant's sentence is constrained by statute" intended to convey the court's lack of authority to modify a sentence in the circumstances presented there, rather than a constraint on the court's subject matter jurisdiction.

did not have jurisdiction to allow defendant to withdraw plea after sentencing imposed, as "§ 3582(c) acts as a jurisdictional limitation on the ability of district courts to alter previously imposed sentences of imprisonment"); United States v. Garcia, 606 F.3d 209, 212 (5th Cir. 2010) (district court did not have jurisdiction under 18 U.S.C. § 3582(c)(2) to amend a sentence based on Rule 11(c)(a)(C) plea); United States v. Taylor, 778 F.3d 667 (7th Cir. 2015) ("district courts have subject-matter jurisdiction over—that is, the power to adjudicate—a § 3582(c)(2) motion even when authority to grant a motion is absent because the statutory criteria are not met").[3] Moreover, to the extent that the question is directed to the statutory provision as a whole, and not just the exhaustion requirements of 18 U.S.C. § 3582(c), Taylor is persuasive in pointing out that the Supreme Court in Freeman v. United States, 564 U.S. 522 (2011), when considering whether § 3582(c)(2) was available to a defendant who had entered a binding plea agreement under Federal Rule of Criminal Procedure 11(c)(1), "addressed the issue in terms of whether the defendant was statutorily eligible for a sentence reduction, not whether the district court had subject matter jurisdiction to decide his motion." 778 F.3d at 671.

Accordingly, the court concludes that the exhaustion requirements in § 3582(c)(1)(A) are nonjurisdictional and that the court has subject matter jurisdiction to consider Defendant's motion.

---

[3] The Lugo court noted further that while "the First Circuit has not weighed in on the issue, in United States v. Griffin 524 F.3d 71 (1st Cir. 2008), it quoted with seeming approval the Seventh Circuit's pre-Taylor statement that "[Section 3582(c) limits the substantive authority of the district court . . . [and] is a real jurisdictional rule rather than a case-processing requirement.'" Lugo, 2020 WL 1821010 at *3 (citing Griffin, 524 F.3d at 84, which in turn quoted United States v. Smith, 438 F.3d 796, 799 (7th Cir. 2006), overruled by United States v. Taylor, 778 F.3d 667, 671 (7th Cir. 2015)). Griffin concluded that the requirement that the district court correct a sentence within seven days was jurisdictional, and Smith (which was overruled by Taylor) concluded that the court was without jurisdiction to modify a sentence following issuance of the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005). Neither addressed the exhaustion requirements of § 3582(c)(1)(A).

B.  Exhaustion of All Administrative Rights

The government contends that the court "may not modify a sentence unless, as relevant here, the defendant has first fully exhausted all administrative rights." United States' Opp'n to Def's Mot. for Compassionate Release at 5 [#42]. The government contrasts this requirement with that of the PLRA, which only requires that a defendant has exhausted all available administrative rights.

However, under the current version of § 3582(c)(1)(A), the government is incorrect that exhaustion of administrative appeal rights is required before a defendant may bring a motion in federal court seeking compassionate release. The First Step Act of 2018 amended § 3582(c)(1)(A) to allow the court to act under two alternative circumstances. The court may modify an imposed term of imprisonment on motion of the defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194; 18 U.S.C. § 3582(c)(1)(A) (emphasis added). The government's contention that if the warden denies Defendant's request, "Guzman Soto is then required to 'fully exhaust[] all administrative remedies[]' before this Court has authority to consider his request," United States' Opp'n to Def's Mot. for Compassionate Release at 4 [#42], ignores the plain language of the statute.

Instead, the statute mandates that a defendant must act in one of two ways – either to fully exhaust all administrative appeals or to request that the warden seek compassionate release. Consistent with this mandate, this court[4] and others have found that the failure by a defendant to

---

[4] See United States v. Sloane, 19-cr-10117-IT (Dckt. No. 647) (D. Mass. Mar. 19, 2020)

7

make a request to the warden in the first instance may be sufficient to deny a motion for failure to comply with the requirements of § 3582(c)(1)(A). Here, Defendant has made a request, and accordingly, is not barred from pursuing his motion by a failure to fully exhaust all administrative remedies.

    C.  The Court's Discretion to Waive the Thirty-Day Waiting Period

The remaining question is whether the court has the discretion to waive the thirty-day waiting period when, as here, the defendant has filed a request with the warden at his facility. "Where Congress specifically mandates, exhaustion is required." McCarthy v. Madigan, 503 U.S. 140, 144 (1992). However, "where Congress has not clearly required exhaustion, sound judicial discretion governs." Id.[5]

The government argues that the court cannot waive the thirty-day waiting period and points the court towards cases considering the exhaustion requirements of the PLRA. The Supreme Court has held that the PLRA's exhaustion requirements are mandatory because the text "suggests no limits on an inmate's obligation to exhaust." Ross v. Blake, 136 S. Ct. 1850, 1856 (2016). Under the PLRA, a prisoner may not move forward with a claim in court until he

---

(denying compassionate release motion in part because defendant had not filed a request with the warden of his facility first).

[5] The courts are split on whether a judge may waive the thirty-day waiting period. Some courts have found the thirty-day waiting period to be mandatory. See, e.g., United States v. Demaria, 2020 WL 1888910 (S.D.N.Y. Apr. 16, 2020); United States v. Rensing, 2020 WL 1847782, at *1 (S.D.N.Y. Apr. 13, 2020); United States v. Roberts, 2020 WL 1700032, at *2 (S.D.N.Y. Apr. 8, 2020); United States v. Woodson, 2020 WL 1673253, at *2 (S.D.N.Y. Apr. 6, 2020); United States v. Gross, 2020 WL 1673244, at *2 (S.D.N.Y. Apr. 6, 2020). Others have determined that the court has discretion to waive the thirty-day period. See, e.g., United States v. Russo, 2020 WL 1862294 (S.D.N.Y. Apr. 14, 2020); United States v. Smith, 2020 WL 1849748 (S.D.N.Y. Apr. 13, 2020); United States v. Bin Wen, 2020 WL 1845104, at *4-7 (W.D.N.Y. Apr. 13, 2020); United States v. Haney, 2020 WL 1821988 at *1 (S.D.N.Y. Apr. 13, 2020); United States v. Sawicz, 2020 WL 1815851 at *2 (E.D.N.Y. Apr. 10, 2020); United States v. McCarthy, 2020 WL 1698732 (D. Conn. Apr. 8, 2020); United States v. Colvin, 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020); United States v. Perez, 2020 WL 1546422 (S.D.N.Y. Apr. 1, 2020).

has exhausted his available administrative remedies. Id. The intent of this "strengthened" PLRA exhaustion requirement is to 1) give an agency an opportunity to "correct its own mistakes with respect to the programs it administers before it is haled into federal court" and 2) promote efficiency so that some cases can be resolved quickly and efficiently administratively before proceeding to court. Woodford v. Ngo, 548 U.S. 81, 89 (2006) (quoting in part McCarthy, 503 U.S. at 145).

However, the text of § 3582(c)(1)(A) and its purpose are substantially different from the PLRA. First, the procedures do not serve the purpose of giving BOP an opportunity to correct mistakes or avoid being sued, or the purpose of allowing the case to be resolved administratively before proceeding to court. Instead, the procedures determine whether the Defendant will have the BOP's assistance in bringing his motion, or not. Either way, under § 3582(c)(1)(A), a judicial order is still required to modify an imposed term of imprisonment. Accordingly, although waiting thirty days may simplify matters for the court where the BOP joins the motion, the waiting period generally will not eliminate the need for judicial involvement where the BOP opposes release (except in circumstances where the effect of the waiting period is to moot the need for release, such as the completion of the existing sentence or the defendant's death). Second, unlike the PLRA, the statute specifically allows a prisoner to move forward with a motion in court after filing a request with the warden even if the warden has not acted on the request. This alternative to exhaustion suggests that Congress understood that some requests for relief may be too urgent to wait for the BOP's process. While a court may certainly decline to consider a motion where Defendant has not waited thirty days, nothing in the statutory scheme suggests that Congress intended to preclude the court from exercising judicial discretion and to take into account timeliness and exigent circumstances related to why the defendant seeks

compassionate release. See United States v. Haney, 2020 WL 1821988 at *3 (S.D.N.Y. Apr. 13, 2020) (finding that the 30-day waiting period waivable).

This reading of the statute conforms with the nature of compassionate release, as expanded by Congress through the First Step Act. In order for a court to grant compassionate release, the court must consider whether "extraordinary and compelling" reasons exist for such release. These reasons include considerations of the inmate's age, health, and other exigent circumstances. Thus, Congress necessarily recognized that time is of the essence for determining whether compassionate release is appropriate. 18 U.S.C. § 3582(c)(1)(A)(i); Application Note 1 to USSG, § 1B1.13.

Therefore, as Congress has carved out an alternative to exhaustion in the language of § 3582(c)(1)(A), the court finds it has authority and discretion to waive the thirty-day waiting period based on exigent circumstances.

### III. Conclusion

Accordingly, for the aforementioned reasons, the court concludes that it has subject matter jurisdiction over Defendant's Expedited Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) [#41] and may exercise its discretion to consider Defendant's motion without waiting thirty days. The matter will be set for an expedited hearing to address whether extraordinary and compelling reasons justify a sentence reduction consistent with applicable policy statements issued by the Sentencing Commission, whether home confinement as determined by the BOP is an available alternative for a defendant facing removal, and whether the government's two-week quarantine request is reasonable.

IT IS SO ORDERED.

Date: April 17, 2020                                /s/ Indira Talwani
                                                   United States District Judge