UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| v. | *   Criminal No. 1:18-cr-10086-IT |
| | * |
| MANUEL ALEJANDRO GUZMAN SOTO, | * |
| | * |
| Defendant. | * |

MEMORANDUM & ORDER

May 1, 2020

TALWANI, D.J.

  Defendant Manuel Alejandro Guzman Soto filed an <u>Expedited Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A)</u> [#41] in light of the COVID-19 pandemic.[1] The government initially opposed his motion and also requested that "before release, Guzman Soto be quarantined for fourteen days to minimize the possibility of any spread of COVID-19 from defendant to the public, or to other detainees if . . . Guzman Soto is released to immigration officials prior to his impending deportation." United States' Opposition [#42] at 9.

  The court determined that after a defendant makes a request to the warden, the court has the authority and discretion under 18 U.S.C. § 3582(c)(1)(A) to waive the statutory thirty-day waiting period based on exigent circumstances. Memorandum & Order [#48]. Defendant's medical records as produced by the government appeared to indicate that Defendant was in quarantine as of April 16, 2010, <u>see</u> Medical Records [#51] at 37, and at an expedited hearing, the government committed to providing the court with further BOP quarantine information. Elec. Clerk's Notes [#53].

---

[1] The background and procedural history of this matter is set forth in the court's <u>Memorandum & Order</u> [#48].

> After the hearing, the court ordered that:
>
> Subject to any objections filed no later than April 29, 2020, the court anticipates issuing on May 1, 2020, a modified judgment pursuant to 18 U.S.C. § 3582(c)(1)(A) granting Defendant Manuel Alejandro Guzman Soto compassionate release effective on May 4, 2020. The court tentatively finds a reduction of sentence to be consistent with the applicable policy statements issued by the Sentencing Commission and to be appropriate after considering factors set forth in 18 U.S.C. § 3553(a), and finds that the defendant will have served 75% of his sentence by that date and that extraordinary and compelling reasons warrant the reduction in sentence.
>
> <u>Consistent with this order, the government shall ensure</u> Defendant's immigration detainer currently lodged with the United States Marshal Service is filed with the Bureau of Prisons no later than May 1, 2020, and <u>that Defendant is placed in quarantine for at least fourteen days prior to May 4, 2020</u>.

Elec. Order [#54] (emphasis added). On April 29, 2020, the government filed its <u>Response to Court's Order</u> [#55] with no stated objection to the proposed modified judgment. The <u>Response</u> confirmed that an immigration detainer had been lodged with the facility. <u>Id.</u> Statements in the <u>Response</u> concerning quarantine are discussed below.

I.      <u>Defendant's Request for Compassionate Release</u>

Under 18 U.S.C. § 3582(c)(1)(A), a motion for compassionate release may only be granted after considering the sentencing factors set forth in section 3553(a) to the extent that they are applicable and after a determination that there are "extraordinary and compelling reasons" to warrant a sentence reduction consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A)(i).

   A.  <u>Factors under 18 U.S.C. § 3553(a)</u>

This court sentenced Defendant to six months imprisonment for violating the terms of his supervised release by reentering the United States after his prior deportation. At the revocation hearing, the court noted that Defendant was a non-violent offender but nonetheless imposed a six-month sentence to deter the Defendant from again reentering the United States. Judgment and

Statement of Reasons [#40].

Under the circumstances here, however, a reduction of sentence does not undercut the specific deterrence stemming from Defendant's sentence. Defendant will have served 75% of his sentence by May 4, much of it during the pandemic, and the court anticipates that the prompt detention of Defendant upon his last reentry and the fear of serious illness or death while incarcerated during a pandemic will also have a deterrent effect on Defendant's further efforts to enter this country. The court finds that a modified sentence is an adequate and just punishment for his offense.

    B.  <u>Extraordinary and Compelling Reasons for Reduction in Sentence</u>

Guzman Soto asserts extraordinary and compelling reasons for a sentence reduction because he suffers from hypertension and is incarcerated in MDC Brooklyn in New York City, which he contends places him at heightened risk of contracting the COVID-19 coronavirus and serious complications if he does contract it.

Under the applicable policy statement in the Sentencing Guidelines, a movant can show extraordinary and compelling reasons for a sentence reduction by establishing that he is "suffering from a serious physical or medical condition, . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." Application Note (1)(A)(ii) to USSG, § 1B1.13.

Defendant's medical records show that he suffers from hypertension. This condition increases his risk for serious complications from contracting COVID-19, including death. See Def's Mot. for Compassionate Release at 18 [#41] (citing a World Health Organization report that individuals with diabetes and hypertension are at a significantly higher risk of death from COVID-19 than the general population); <u>United States v. Scparta</u>, 2020 WL 1910481, at *9

(S.D.N.Y. April 20, 2020) (finding hypertension to be a comorbidity that increases the risk of death from COVID-19). Hypertension is a condition that substantially diminishes Guzman Soto's ability to provide self-care in the prison environment as the condition lowers his immune response to effectively fight the coronavirus. Therefore, his health circumstances counsel in favor of compassionate release.

In addition, Defendant highlights that the location of his facility, New York City, has been the "epicenter of the coronavirus pandemic" and that prisons are particularly dangerous because he and other inmates cannot socially isolate and stay out of contact from infected individuals. Def's Mot. for Compassionate Release 3-4 [#41]; see also Def's Ex. 1 – Letter from Warden Edge [#46-1] (stating that, as of April 9, 2020, three inmates out of eleven tested were diagnosed with coronavirus as well as nine staff members); Federal Bureau of Prisons – COVID 19, https://www.bop.gov/coronavirus, (last accessed on May 1, 2020) (Bureau of Prisons website reporting that MDC Brooklyn has reported that 27 staff members have tested positive for COVID-19). New York City has faced more infections and more deaths than any other city in the country. J. David Goodman & William Rashbaum, N.Y.C. Death Toll Soars Past 10,000 in Revised Virus Count, NY Times (Apr. 14, 2020), https://www.nytimes.com/2020/04/14/nyregion/new-york-coronavirus-deaths. html (last accessed on Apr. 27, 2020). Defendant's prison is of course not immune to the substantial medical emergency in New York City and MDC Brooklyn has confirmed that staff and prisoners have become infected. Def's Ex. 1 to Reply – Warden Edge Letter [#46-1]. Even in the short time between the warden's letter on April 9 and May 1, the number of staff diagnosed with COVID-19 has tripled. Federal Bureau of Prisons – COVID-19 Cases, https://www.bop.gov/coronavirus, (last accessed on May 1, 2020) (stating that 27 MDC Brooklyn staff have contracted the disease). While the Bureau of Prisons has taken steps to mitigate the spread of the disease, see Def's Ex. 2 – Jordan Decl. [#46-2], the

task of containing the spread of the disease is very substantial. At the same time, the limited ability for prisoners to self-isolate and avoid touching surfaces that infected individuals may have touched hinders their ability to avoid contracting the disease. See Def's Ex. A – Von Dornum Decl. 11 [#41-1]. According to the record before the court, prisoners are housed in two-person cells or in large dormitories with up to seventy prisoners in three-tiered bunks 3-5 feet away from each other. Id. In addition, MDC Brooklyn reportedly lacks a separate medical unit for ill inmates. Id. at 12. Therefore, the risk faced by Defendant is heightened by his incarceration in New York City and by the specific conditions in MDC Brooklyn.

    The government argues that Defendant is not any more vulnerable than other inmates with the same medical condition because he does not claim he came into contact with infected prisoners or staff. The court frames the question differently based on the language and spirit of the applicable Sentencing Commission policy statement and recent actions by the United States Attorney General. The Commission's policy statement includes a catch-all provision that allows for compassionate release when "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with" the other enumerated reasons. Application Note (1)(D) to USSG, § 1B1.13.[2] Moreover, the Attorney General of the United States has concluded that "there are some at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement . . ., where appropriate, to protect the health and safety of BOP personnel and the people in our custody," and has directed the Bureau of Prisons ("BOP") to transfer inmates to home confinement where appropriate to decrease the risks to their health. See Memorandum for Director of Bureau of

---

[2] While the catch-all provision only covers factors "determined by the Director of the Bureau of Prisons," Defendant correctly points out the policy statement was not updated after the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat 5194, amended § 3582 to allow courts to consider motions for compassionate release.

Prisons (March 26, 2020), accessed at https://www.justice.gov/file/1262731/download (last accessed Apr. 28, 2020). The CARES Act also authorized the Attorney General to expand the cohort of inmates who can be considered for home release upon the Attorney General's finding that emergency conditions are materially affecting the function of the Bureau of Prisons, and the Attorney General has made that finding. Memorandum for Director of Bureau of Prisons (April 3, 2020), accessed at https://www.justice.gov/file/1266661/download (last accessed Apr. 28, 2020).

Therefore, the Attorney General, in giving direction to the Director of the Bureau of Prisons, has recognized that COVID-19 is an extraordinary and compelling factor which may be considered, alongside other factors, when determining whether home confinement is merited for certain prisoners. Here, where Guzman Soto may have been granted home confinement but for his immigration status, the court finds that compassionate release is appropriate because of the extraordinary and compelling danger posed by COVID-19. As the Attorney General's memorandums make clear, compassionate release under these circumstances is beneficial not only to Guzman Soto, but also to the Bureau of Prison staff and prisoners remaining in MDC Brooklyn.

Finally, the court must also determine that the defendant is not a danger to the safety of any other person or the community. Application Note (2) to USSG, § 1B1.13. By May 4, 2020, Guzman Soto will have served 75% of his sentence for his non-violent offense. Permitting his release on that date will result in little more than one month in sentence reduction. Guzman Soto is also subject to an immigration detainer whereby, upon release, he will be taken into custody by Immigration and Customs Enforcement for removal. Therefore, based on the record before the court, the court determines that Guzman Soto is not a danger to any other person or the community if compassionate release is granted.

II.  The Government's Request for a Quarantine Order

The court has attempted to take the government's request for a 14 day quarantine into account, seeking information at the emergency hearing on his quarantine status, noting that his medical records indicated he had already been placed in quarantine, and specifically ordering that "the government shall ensure . . . that Defendant is placed in quarantine for at least fourteen days prior to May 4, 2020," and that the government may file any objections to a May 4 release date by April 29, 2020. Elec. Order [#54].

Despite the commitment by government counsel at the April 22 hearing to provide quarantine information to the court, and the court's electronic order directing the government to ensure a two week quarantine prior to May 4, the government counsel reports that he did not speak to a representative of the facility regarding Guzman Soto's quarantine status until April 29, 2020. Response [#55]. The Response reports that on April 16 (two days after the government's request for quarantine), the BOP moved Defendant *from* quarantine and *into* the general population, and that "[a]s of April 29, 2020, the defendant is being returned to the quarantined unit in anticipation of the Court's Order of release." Id.

The government's failure to report to the court earlier on the quarantine status and the disregard of this court's electronic order have created a problem here. Because the government moved Defendant out of quarantine after requesting a quarantine order and did not move Defendant back into quarantine until April 29, Defendant will not have had a full fourteen-day quarantine period prior to the May 4 release date. Accordingly, to ensure that Defendant poses no risk to other detainees if Defendant is subsequently detained by Immigration and Customs Enforcement ("ICE"), and to individuals in the Dominican Republic if Defendant is deported, the court ORDERS the Bureau of Prisons either (1) to test Defendant for COVID-19 immediately, so that upon his release on May 4, 2020, ICE may be alerted if he has tested positive; or (2) to

obtain ICE's agreement to maintain Defendant's quarantine for the balance of the fourteen day period. <u>The government shall promptly file a report committing to one of these two alternatives</u>.[3]

III.     <u>Conclusion</u>

After considering the statutory factors under 18 U.S.C. § 3553(a), and finding under 18 U.S.C. § 3582(c)(1)(A) that there are extraordinary and compelling reasons for compassionate release and that compassionate release is consistent with the applicable Sentencing Commission policy statements, Defendant's <u>Expedited Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A)</u> [#41] is GRANTED. The court will issue a modified judgment for time-served on May 4, 2020.

The court ORDERS the Bureau of Prisons either (1) to test Defendant for COVID-19 immediately, so that upon his release on May 4, 2020, ICE may be alerted if he has tested positive; or (2) to obtain ICE's agreement to maintain Defendant's quarantine for the balance of the fourteen day period. <u>The government shall promptly file a report committing to one of these two alternatives</u>.

IT IS SO ORDERED.

Date: May 1, 2020                                                          /s/ Indira Talwani
                                                                           United States District Judge

---

[3] The court gives government counsel the benefit of the doubt and assumes the disregard of the court's electronic order was inadvertent. Further disregard of the court's orders, however, is likely to be viewed differently and be addressed more formally.